WASHINGTON (BARNEY v.). See Case No. 1,033.

WASHINGTON (BOSWELL v.). See Case No. 1,684.

WASHINGTON (BOTELOR v.). See Case No. 1,685.

WASHINGTON (CAREY v.). See Case No. 2,404.

## Case No. 17,225.

### WASHINGTON v. CASANAVE.

[5 Cranch, C. C. 500.] [1]

Circuit Court, District of Columbia. Nov. Term, 1838.

LICENSE TAX — KEEPER OF WOOD-YARD — CORPORATE POWERS.

A keeper of a wood-yard in Washington is a retailer, within the meaning of that clause in the charter which authorizes the corporation "to provide for licensing, taxing, and regulating auctions. retailers. ordinaries, and taverns, hackney carriages," &c.

Appeal from the judgment of a justice of the peace, rendered against the corporation of Washington upon a warrant for the penalty of $50. "for that he the said Peter Casanave did, on the 2d day of September, 1838, keep a wood and coal-yard in the said city of Washington, to sell and barter firewood and coal, and did sell and barter firewood and coal, at retail, in the said city, without first obtaining a license so to do, contrary to the act or acts of the said mayor, &c., on that subject made and provided."

This prosecution was founded on the by-law of the 28th of July, 1831, entitled "An act to provide a revenue for the canal fund," by which it is enacted, "that from and after the 1st day of August next, it shall not be lawful for any person or persons to sell or barter lumber, firewood, or coal: to sell or barter bricks; to sell or barter porter, ale, or beer; to keep a livery-stable; or to trade or traffic in slaves, within the limits of this corporation, without first obtaining a license therefor, as hereinafter provided for. from the mayor, (who is hereby authorized to issue the same, to be and remain in force for one year;) for each of which the following taxes shall be paid at the time of taking out the same, to wit: For a license to keep a lumber-yard, and to sell and barter firewood, $40. For a license to keep a wood-yard, and to sell and barter firewood, $20. For a license to keep a coal-yard, and to sell and barter coal, $15. For a license to keep a brick-yard, and to sell and barter bricks, $30. For a license to keep a wood and lumber-yard, to sell and barter firewood and lumber, $50. For a license to keep a wood and coal-yard, to sell and barter firewood and coal, $40. For a license to keep a lumber, wood, and coal-yard, to sell and barter lumber, firewood, and coal, $60. For a license to sell or barter porter, ale, and

[1] [Reported by Hon. William Cranch, Chief Judge.]

beer, brewed within the District of Columbia, in quantities not less than one barrel, or thirty-one and an half gallons, $50; and for a license to sell or barter porter, ale, and beer, not brewed in the District of Columbia, in addition to any other license obtained from this corporation, $25. For a license to keep a livery-stable, $20. For a license to trade or traffic in slaves for profit, whether as agent or otherwise, $400. And every person who shall sell or barter at retail, trade, traffic, or keep, as aforesaid, without first obtaining a license therefor, shall forfeit and pay for each and every offence, a sum of not less than $20, nor more than $50, to be recovered and disposed of as other fines are."

Mr. Hoban, for defendant, (the appellee,) contended that the corporation had no power, under their charter, to tax anything but property; not mere trades or professions, which could not be assessed, and the taxes of which would be subject to no limit. That such taxes are derogatory to common right, and inconsistent with the general law of the land. That the by-law does not profess to be passed under the power to license retailers, for it affects wholesale dealers as well as retailers; and a man who should sell wood or coal by wholesale would be as much liable to the penalty as one who should sell firewood by the foot and coal by the peck. The keeper of a livery-stable cannot, in any sense of the word, be called a retailer; so the trafficker in slaves, who collects them individually or in small numbers, and sells them by cargo, cannot be called a retailer, and yet he would be liable to the penalty of the by-law. The same observation applies to the licenses granted under the by-law of the 28th of October, 1831, to confectioners, and the venders of hats, boots, and shoes, hardware, perfumery, medicines, jewelry, and watches, dry goods, and china, glass, and crockery ware, the penalty is not for retailing, but for selling, whether by wholesale or retail. He also contended that the word "retailers" in the charter applied only to retailers of spirituous liquors.

Mr. Bradley, contra, contended that the corporation derived their power to tax the keeper of a wood-yard from their power "to provide for the inspection of lumber and other building materials, and for the appointment of inspectors," and "to provide for the appointment of appraisers and measurers of builders' work and materials, and also of wood, coal, grain, and lumber," contained in the 7th and 8th sections of the charter of 1820; for the corporation cannot exercise their power of inspection and control over these matters without the power of granting licenses. He also contended that the keeper of a woodyard is a "retailer," and, as such, liable to be taxed and regulated.

THE COURT, being of that opinion, reversed the judgment of the justice of the peace, and rendered judgment for the lowest penalty, viz., $20.

CRANCH, Chief Judge, dissented, and repeated the substance of his opinion before given in the cases of Carey v. Washington [Case No. 2,404], in November, 1836, and of Washington v. Barber [Id. 17,224], in August, 1837.